UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:11-CR-00087-FL-1

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | **MEMORANDUM** |
| ) | **& RECOMMENDATION** |
| ) | |
| TORRICK JOHNTRELLE RODGERS ) | |
| ) | |

This cause comes before the Court upon Defendant's motion to suppress evidence seized pursuant to a search warrant. (DE-19). Pursuant to 28 U.S.C. 636(b)(1), this matter is before the undersigned for the entry of a memorandum and recommendation. A hearing was held on the motion to suppress on November 15, 2011, during which both sides presented evidence. (DE-23). At the conclusion of the hearing, the undersigned invited the parties to file supplemental memoranda addressing issues raised during the hearing. The parties have done so (DE-26, DE-27) and the matter is now accordingly ripe for adjudication. For the reasons set forth herein, the undersigned recommends that Defendant's motion to suppress be denied.

I.  **BACKGROUND**

On December 3, 2010, Detective Kenneth Adams of the Farmville Police Department applied for a warrant to search the residence located at 4829 Greenpine Road in Farmville, North Carolina, where Defendant lived with his girlfriend, Charlene Evans. (DE-19-1; DE-29, Tr.12). Detective Adams had been investigating Defendant for possible drug activities. In support of the application, Detective Adams submitted an affidavit, which in pertinent part reads as follows:

During the last two years I have been investigating a subject by the name of Johntrelle Torrick Rodgers. During this time Rodgers['] name has repeatedly come up in many different narcotics investigations. Rodgers has been convicted of the following: on 12-18-1997 conspiracy to discharge a firearm into occupied dwelling (felony), on 11-08-2000 sell cocaine (felony), on 02-13-2002 maintain place/dwell/vehicle for controlled substance (felony). Rodgers is currently on probation for the conviction of 01-13-2010 for possession with the intent to sell cocaine (felony).

Johntrelle Rodgers resides at 4829 Greenpine Rd. Farmville, NC. 27828. I have conducted surveillance on this residence several times[.] Over the past several months I have seen Rodgers driving a Silver 2001 Cadillac Deville bearing the North Carolina registration plate number: ZWE3404 registered to Rodgers at the address of 4829 Greenpine Rd. Farmville, NC[] 27828. I have spoken with Rodgers['] Probation Officer Larry Canard. Canard has informed me that this same address is what Rodgers has stated is his home address located 4829 Greenpine Rd. Farmville, NC[] 27828 and that Canard has visited him at this same address.

On 08-19-2009 I received a phone call from a confidential and reliable source of information (referred to from here on as CS). CS stated to me that a subject by the name of Julius Caesar Harris was holding approximately 1 ounce of crack cocaine for Johntrelle Rodgers. CS stated that Harris was traveling to a location in Farmville, NC[] [o]n his bicycle to deliver the crack cocaine for Rodgers. I then placed a phone call to Sgt. Smith of the Farmville Police Dept. Smith was able to intercept Harris, found Harris in possession of [a]pproximately 28.6 grams of crack cocaine, and then arrested Harris. I then came to the Farmville Police Dept[.] to interview Harris and he stated the following:

I have been selling crack cocaine for Rodgers for approximately 3 years. I meet with Rodgers [approximately] two times a day. During this time Rodgers will supply me with crack cocaine to distribute throughout Farmville and I give all of the cash proceeds back to Rodgers. I have [gone] with Rodgers on occasion to test (smoke) the crack cocaine after he has cooked it, but sometimes he will bring it to me and I will just get in the truck with him to test (smoke).

On 09-27-2009 a controlled purchase of 2 grams of crack cocaine was made from Johntrelle Rodgers through the use of a confidential and reliable source (referred to from here on as CS). During this operation the CS was searched prior for any contraband and none was found. The CS then went to the area of West Vines St. in Farmville, NC and met with Rodgers and Rodgers was just standing at the west end of West Vines St. in Farmville, NC. This area is approximately 2 miles away from Rodgers['] residence. Rodgers on this occasion delivered the 2 grams of crack cocaine to the CS in exchange for the buy money that was provided to the CS[.]

On 10-08-2009 a controlled purchase of 3.3 grams of crack cocaine was made from Johntrelle Rodgers thr[ough] the use of a confidential and reliable source (referred to from here on as CS). During this operation the CS was searched for any contraband prior to the purchase and none was found. The CS then went to the area of West Vines St[.] Farmville, NC to meet with Rodgers. The CS

2

approached Rodgers who was standing in the street, the CS gave the money to Johntrelle Rodgers for the purchase of the crack cocaine[,] then Rodgers told the CS to go across the street to "manseenie" (Troy Manuel Hopkins) and he will give you the crack cocaine. The CS then went across the street to Hopkins and Hopkins delivered the crack cocaine to the CS. This area again is only approximately 2 miles from Rodgers['] residence.

    On 11-24-2010 I Inv. Adams had members of Waste Industries assist me in the collection of trash from Johntrelle Rodgers['] residence located at 4829 Greenpine Rd. Farmville, NC[] 27828. This collection was made and brought back to a secure location. A search of the collection was made. During this search I recovered a clear plastic bag containing white powder residue, several plastic baggies with the comers cut off, several plastic knots cut off of plastic bags, and several pairs of latex gloves. Through my training and experience I know these items are commonly used by drug dealers . . . to prepare and package their illegal narcotics [to] sell and distribute (fruits of the crime). I then sent the clear plastic bag to the Pitt County ID Lab for analysis[,] and the white powder residue tested positive for crack cocaine. Also during this search I located miscellaneous paperwork containing Rodgers['] name[.]

    On 12-03-2010 [I] had members of Waste Industries assist me in the collection of trash from Johntrelle Rodgers['] residence located at 4829 Greenpine Rd. Farmville, NC[] 27828. This collection was made during the normal scheduled day for pickup. As the trash truck stopped at the residence prior to Rodgers['] residence a black female brought the trash can out to the roadway and left the trash can at the end of the driveway. This female then walked back to the residence and went inside. The Waste Industries truck then pulled up to next to Rodgers['] trash can and dumped it into the back of the trash truck. This trash was then taken to a secure location where I then collected this trash from the truck. I then conducted a search of this trash. During my search I located several clear plastic baggies containing white powder residue, several plastic baggies with the corners cut off, and several pairs of latex gloves with cut up plastic baggies stuffed inside of them. Thr[ough] my training and experience I kn[ew] these items to be commonly used by drug dealers to prepare[] and package their illegal narcotics [to] sell and distribute (fruits of the crime). On this same date I sent the clear baggies containing the white powder residue to the Pitt County ID Lab for analysis. This material tested positive for crack cocaine.

    Based on this information contained in this affidavit, affiant believes that probable cause exists that the residence located at 4829 Greenpine Rd. Farmville, NC[] 27828, is being used to prepare and package crack cocaine for s[ale] and distribution. Affiant further believes that a search [of] this residence at 4829 Greenpine Rd. Farmville, NC[] 27828 will lead to the recovery of controlled substances, drug paraphernalia, and other evidence of the preparation and packaging of controlled substances. Affiant therefore respectfully ask[s] that the court issue a warrant to search the persons, premises, and vehicles described herein, and seize any evidence of the herein named crimes.

(DE-19-1).

Based on the sworn statements contained in the affidavit, a judge in Superior Court, Pitt County, issued a warrant to search the residence at Greenpine Road. (DE-19-1). When law enforcement officers executed the search warrant and searched the residence, they found approximately 62.83 grams of crack cocaine, 53.89 grams of cocaine, 6.78 grams of marijuana, drug ledgers, two digital scales, a box of latex gloves and two boxes of small plastic bags. Defendant was later indicted for conspiracy to distribute and possess with the intent to distribute cocaine and crack cocaine, distribution of cocaine and crack cocaine, and possession with the intent to distribute cocaine and crack cocaine. (DE-1).

On November 15, 2011, the Court held a hearing on Defendant's motion to suppress. (DE-23). At the suppression hearing, Detective Adams testified regarding the facts supporting his application for the search warrant as follows. During his investigation of Defendant, Detective Adams contacted Waste Industries, the company that collects residential garbage in Farmville, to assist him in a search of the trash from Defendant's home. (DE-29, Tr.13-14). Detective Adams spoke with one of the Waste Industries garbage truck drivers, Carl Massey ("Massey"), who told him that the trash would be picked up from Defendant's residence on a Thursday. (Tr.14-15). Detective Adams was not present during the trash collection from Defendant's residence on November 24, 2010. Upon searching the trash from Defendant's residence, Detective Adams found several "plastic baggies with white residue . . . [that] . . . c[a]me back positive for crack cocaine." (Tr.18). Detective Adams later learned, however that Friday, not Thursday, was the regularly-scheduled trash collection day for Defendant's residence. (*Id.*). Thus, Defendant's garbage can was not at the street curb on November 24th, but instead had been removed from its location "up against the carport" of Defendant's home. (*Id.*).

Detective Adams decided to conduct a second trash pull on a Friday, the regularly-scheduled trash collection day for Defendant's residence. Detective Adams "made contact with Mr. Massey again and asked for him to assist . . . again on a Friday, which [was] . . . the 3rd of December." (Tr. 18). He instructed Massey that the trash collected from Defendant's residence "needed to be out by the curb" this time. (Tr.19). On the morning of December 3, 2010, Detective Adams called Massey, who advised that he was en route to Defendant's residence. (Tr.19). Detective Adams drove to the site and positioned himself at "the end of Greenpine Road where [he] had a direct line of sight of the road." (*Id.*). However, Detective Adams lacked "direct line of sight of the residence" and therefore could not see the trash can when it was collected. (*Id.*). Massey collected garbage from three or four residences, compacted it, then pulled up to Defendant's residence. (Tr.19-20; Def.'s Exhs. 8,9). Massey informed Detective Adams that "as he was pulling up to [Defendant's] residence, a [black] female brought the trash out to the end of the driveway." (Tr.20). The black female appeared to be a teenager. (Tr.32, Def.'s Exh. 9). Massey collected the garbage from Defendant's residence and immediately called Detective Adams, who asked Massey to bring the trash to an "evidence room out by the ballfield right down the street from the police department," where the previous trash search on November 24th had taken place. (Tr.16, 20). Detective Adams watched the garbage truck drive down Greenpine Road and then to the ball field. (Tr.20). It was approximately 7:30 a.m. when Detective Adams met with Massey and retrieved the trash from Defendant's residence. (Tr.20; Def.'s Exh. 9). Upon searching through the garbage, Detective Adams again found "latex gloves, plastic bags, knots, and . . . clear plastic bags with residue." (Tr.21). The white residue tested positive for crack cocaine. Detective Adams testified that he also found documentation inside the trash belonging to Defendant's girlfriend. (Tr.35).

5

Charlene Evans, Defendant's girlfriend, testified that she and her five children resided with Defendant at 4829 Greenpine Road on December 3, 2010. (Tr.38-39). Of the five children, Ms. Evans had three girls between the ages of fourteen and nine years old at the time. Ms. Evans stated that no other black females had access to the home. (Tr.40). Ms. Evans left the residence at 5:45 a.m. on the morning of December 3, 2010 to go to work. (Tr.41). Her nine-year-old daughter left the house at 7:00 a.m. to ride the school bus. The school bus picked up her two other daughters from the house at 8:00 a.m. Ms. Evans testified that neither she nor her daughters brought the trash to the curb on December 3, 2010. (Tr.43). Instead, she stated that her "son took it . . . . [t]o the side of the road Thursday night." (Tr.47). She explained that they "usually take it on Thursday night . . . . [t]o be picked up the next day, the trash day." (*Id.*). Although Ms. Evans could not specifically recall whether her son had taken the garbage out on Thursday night, December 2nd, or whether the garbage can was at the curb when she left for work on Friday morning, December 3rd, she testified that it was her son's "responsibility to do the trash" and that if her son neglected to take the trash out on Thursday night, she would "usually make him get up and do it" on Friday morning. (Tr.51,53).

Tamara Harper, the fifteen-year-old daughter of Charlene Evans, also testified. (Tr.54). She verified that "rolling the trash out to the curb" was her brother's responsibility, and that neither she nor her sister brought the garbage can to the street on the morning of December 3, 2010. (Tr.56).

Defendant now moves the Court to suppress the evidence found during the search of his residence, arguing that Detective Adams' application for the warrant did not establish probable cause and was obtained in violation of his rights under the Fourth Amendment. (DE-19, DE-26).

## II.  LEGAL BACKGROUND

The Fourth Amendment requires that search warrants be supported by probable cause. U.S. Const. amend. IV. To determine if probable cause exists to support a search warrant, courts apply a "totality of the circumstances" analysis. Illinois v. Gates, 462 U.S. 213, 238 (1983).

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* In reviewing a probable cause determination, the courts accord "'great deference'" to the magistrate's assessment of the facts presented to him. United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990) (quoting Spinelli v. United States, 393 U.S. 410 (1969)). A reviewing court need "only . . . determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." Massachusetts v. Upton, 466 U.S. 727, 728 (1984) (per curiam). "Because of the fourth amendment's strong preference for searches conducted pursuant to warrants, reviewing courts must resist the temptation to 'invalidate warrants by interpreting affidavits in a hypertechnical, rather than a common sense, manner.'" Blackwood, 913 F.2d at 142 (quoting Gates, 462 U.S. at 236). In reviewing a probable cause determination, however, a court may consider "only the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996).

When the Fourth Amendment "demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a truthful showing." Franks v. Delaware, 438 U.S. 154, 164-65 (1978) (citation omitted).

> This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered

> hastily. But surely it is to be "truthful" in the sense that the information put forth
> is believed or appropriately accepted by the affiant as true.

*Id.*

To overcome a "presumption of validity" with respect to a warrant affidavit, a defendant must allege and make an offer of proof of deliberate falsehood or reckless disregard for the truth. United States v. Tate, 524 F.3d 449, 454 (4th Cir. 2008) (describing the burden of making the necessary showing as "a heavy one to bear"). In the universe of errors found in a warrant affidavit, the Supreme Court has been unwilling to extend exclusion to instances of "negligence or innocent mistake." Franks, 438 U.S. at 171; United States v. Gary, 528 F.3d 324, 328-29 (4th Cir. 2008), *cert. denied*, 555 U.S. 1123 (2009). Moreover, a court should not suppress evidence procured pursuant to a search warrant, even if the search warrant is subsequently invalidated, unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." United States v. Leon, 468 U.S. 897, 922 n.23 (1984); *see also* United States v. Perez, 393 F.3d 457, 461 (4th Cir. 2004) (same); *accord* United States v. Wright, 991 F.2d 1182, 1186 (4th Cir. 1993) ("The inclusion of tainted evidence does not invalidate a search warrant if enough untainted evidence supports it . . . ."). "Usually, searches conducted 'pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search.'" Perez, 393 F.3d at 461 (quoting Leon, 468 U.S. at 922) (internal quotation marks omitted).

Nevertheless, there are four circumstances in which an officer has "no reasonable grounds for believing that the warrant was properly issued." Leon, 468 U.S. at 922-23. Suppression remains appropriate if: (1) the magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) the

magistrate "wholly abandoned his judicial role;" (3) the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" or (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *Id.* at 923; *see also* Gary, 528 F.3d at 329; Perez, 393 F.3d at 461.

With these legal precepts in mind, the undersigned considers the evidence and arguments regarding Defendant's motion to suppress.

### III.    ANALYSIS

Defendant argues that Detective Adams' application for the warrant failed to establish probable cause for the search and contained "deliberate misstatements of fact that misled the magistrate into making the probable cause finding." (DE-19, p.4). Contrary to the information contained in the application, Defendant contends his garbage can was located within the curtilage of his residence at all times and that the trash searches conducted on November 24th and December 3rd by Detective Adams therefore violated his reasonable expectation of privacy under the Fourth Amendment. Moreover, argues Defendant, the good-faith exception established in *Leon* does not apply, because Detective Adams knew that the November 24th search was improper yet included the information in his application regarding the results of the search and failed to inform the issuing judge. Because the search of his residence "was based, at least in part, upon information obtained in the November 24, 2010 search of his trash container," Defendant asserts the search was unlawful and any evidence obtained therefrom should be suppressed. (DE-26, p.4).

After careful review, the undersigned concludes that the affidavit was sufficient to establish probable cause to search the residence. Further, even if the application was insufficient,

Detective Adams conducted the search in good faith reliance upon the search warrant. It is therefore recommended that Defendant's motion to suppress be denied.

As an initial matter, there is no question that the search of Defendant's trash collected on November 24, 2010 was improper, as the garbage can was removed from within the curtilage of the residence. *See* California v. Greenwood, 486 U.S. 35, 40-42 (1988) (requiring trash to be abandoned for collection outside the curtilage of the home in order for an officer's search through it to be constitutional). The government concedes the issue and "recognizes that the results of the November 24 trash search should not be considered in determining whether there was probable cause for the issuance of the search warrant." (DE-27, p.8). The undersigned therefore considers the sufficiency of the affidavit absent any information regarding the November 24, 2010 trash pull. *See* United States v. Gillenwaters, 890 F.2d 679, 681-82 (4th Cir. 1989) (information illegally obtained must be excised from warrant affidavit).

Restricting review to the information presented to the issuing judge, *see* Wilhelm, 80 F.3d at 118, the application establishes the following: At the time he applied for the search warrant, Detective Adams had been investigating Defendant for two years in connection with suspected drug activities. Defendant had been convicted of several felony drug charges. "An officer's report in his affidavit of 'the target's prior criminal activity or record is clearly material to the probable cause determination.'" United States v. Bynum, 293 F.3d 192, 197 (4th Cir. 2002) (quoting United States v. Taylor, 985 F.2d 3, 6 (1st Cir. 1993)). Detective Adams interviewed Julius Harris, who stated he sold crack cocaine for Defendant. Through a confidential and reliable source, Detective Adams made two controlled purchases of crack cocaine from Defendant. Finally, the December 3rd search of Defendant's garbage yielded drug paraphernalia and crack cocaine residue. Under the totality of these circumstances, the issuing judge had

10

sufficient information to believe that contraband or evidence of a crime would be found at Defendant's residence.  *See* Gary, 528 F.3d at 329 (concluding there was probable cause to search a residence based on an anonymous tip and white powder residue found in a trash bag removed from one of two trash cans located in an alley behind the residence).

The government recognizes that additional details would have strengthened the affidavit. Specifically, Detective Adams failed to include in his affidavit: (1) the manner in which the trash collected from Defendant's residence on December 3, 2010 was kept separate and apart from other garbage; and (2) that the trash collected on December 3, 2010 included documents identifying Charlene Evans.  Although the exhibits and testimony at the suppression hearing established both of these facts, they are not contained in the affidavit, and the issuing judge had no knowledge of them.  (Tr. 22, 35-36).[1]  "But a finding of probable cause does not require absolute certainty" only "'a fair probability'" that evidence of a crime will be found.  Gary, 528 F.3d at 327 (quoting Gates, 462 U.S. at 238).  The undersigned agrees with the government that, while the affidavit could have been more detailed, it was nevertheless sufficient to establish probable cause, particularly as Detective Adams' affidavit consistently referred to the trash searched as the trash collected from 4829 Greenpine Road:

> On 12-03-2010 [I] had members of Waste Industries assist me in the collection of trash from Johntrelle Rodgers['] residence located at 4829 Greenpine Rd. Farmville, NC[] 27828.
>
> . . . .
>
> The Waste Industries truck then pulled up to next to Rodgers['] trash can and dumped it into the back of the trash truck.  **This trash** was then taken to a secure location where I then collected **this trash** from the truck.  I then conducted a search of **this trash**. (emphasis added).

---

[1]    Q. Did you show any photographs or anything that was found during the trash pulls to the magistrate when he issued . . . .
       A. I did not.

(DE-19-1).

Even if the affidavit were insufficient to establish probable cause, the government argues that the search should be upheld under the good-faith exception established in *Leon*. Defendant contends the *Leon* exception should not apply because Detective Adams included in his affidavit information gained as a result of the invalid November 24th search of Defendant's trash, yet he did not inform the issuing judge of the circumstances indicating the November 24th search was conducted in error. It is important to note what Detective Adams put in his affidavit: "On 11-24-2010 I Inv. Adams had members of Waste Industries assist me in the collection of trash from Johntrelle Rodgers['] residence located at 4829 Greenpine Rd. Farmville, NC 27828." (DE-19-1). Nothing in his recitation mistakes the facts. Rather, the affidavit neglected to provide the judge with a complete picture of the circumstances surrounding the November 24th search. However, Detective Adams' omission does not constitute a "reckless disregard to the truth," Franks, 438 U.S. at 156. Even without the information regarding the November 24th search, the judge had sufficient evidence from which he could have found probable cause. Thus it cannot be said that the issuing judge was misled into issuing the search warrant. There is also no indication that the issuing judge served as a "rubber stamp" for Detective Adams; that the affidavit was "lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" or that the resulting warrant was "facially deficient." Leon, 468 U.S. at 923; s*ee also* Gary, 528 F.3d at 329. The undersigned concludes that the search is therefore entitled to *Leon*'s good-faith exception.

Finally, Defendant contends the trash search conducted on December 3rd is invalid because the trash can was removed from within the curtilage of the residence. Defendant presented evidence at the suppression hearing tending to show that, contrary to the information presented in the affidavit, no black female rolled the trash can to the curb. Ms. Evans testified that neither

12

she nor her daughters took the trash can to the curb, and that no other black female had access to the residence.

However, there was ample evidence at the suppression hearing to indicate that the trash can was nevertheless collected from the curb and not from within the curtilage of the residence. Friday was the regularly-scheduled trash day for Defendant's residence. Detective Adams instructed Massey that the trash "needed to be out by the curb." (Tr. 19). Massey told Detective Adams that the trash was at the curb when he collected it. Ms. Evans testified that her son took the trash can to the curb the previous evening because that was the usual practice and the trash was her son's responsibility. While she had no specific recollection of whether her son took the trash out on the evening of December 2nd or whether the trash was by the curb the following morning, Ms. Evans testified that if it had not been at the curb in the morning, she would have woken up her son and made him take out the trash. Ms. Harper verified that taking out the trash was one of her brother's chores. No one testified that the garbage can was anywhere other than at the street curb when it was collected.

The clear weight of the evidence indicates that the trash was by the curb when it was collected from Defendant's residence on Friday, December 3rd. Exactly how the trash got to the curb is ultimately immaterial to the question of whether the trash was improperly removed from within the curtilage of the home. Defendant presented no evidence to suggest that the garbage can was within the curtilage, and the undersigned finds as fact that the trash collected from Defendant's residence on December 3, 2010 was at the curb and therefore abandoned. Because he abandoned the trash, Defendant "could have had no reasonable expectation of privacy in the inculpatory items that [he] discarded." Greenwood, 486 U.S. at 41. Accordingly, Detective Adams' search of the trash was constitutional and supports his search warrant application.

## IV. CONCLUSION

Because the application for the search warrant established probable cause to search Defendant's residence, the undersigned concludes that the search was lawful. Detective Adams did not intentionally mislead the issuing judge and carried out the search in good-faith reliance upon the search warrant. Defendant had no reasonable expectation of privacy in the trash collected from his residence on December 3, 2010. As the search of Defendant's residence was conducted pursuant to a valid search warrant issued upon probable cause, the undersigned RECOMMENDS that Defendant's motion to suppress (DE-19) be DENIED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Friday, December 2, 2011.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE