IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:11-CR-87-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| TORRICK JOHNTRELLE RODGERS, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to suppress (DE # 19), which was referred to Magistrate Judge William A. Webb to conduct an evidentiary hearing and provide a memorandum and recommendation ("M&R") (DE # 30). The magistrate judge recommends that the court deny the motion. Defendant filed objection December 14, 2011, and the time for the government to respond has expired. In this posture, the issues raised are ripe for adjudication. For the reasons set forth below, the court adopts the magistrate judge's recommendation and denies defendant's motion to suppress.

## STATEMENT OF THE CASE

Defendant was indicted on August 10, 2011, on charges of conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine and two-hundred eighty grams or more of cocaine base (crack), in violation of 21 U.S.C. § 846; two counts of knowingly and intentionally distributing a quantity of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1); and possession with intent to distribute twenty-eight grams or more of cocaine base (crack) and a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

On October 26, 2011, defendant filed the instant motion to suppress. Defendant seeks to suppress all evidence seized as a direct or indirect consequence of law enforcement's search of his residence on December 3, 2010. The government responded in opposition on November 8, 2011, and the motion was referred to Magistrate Judge Webb. On November 15, 2011, the magistrate judge held an evidentiary hearing and allowed the parties additional time to supplement their briefing. Defendant filed memorandum in further support of his motion, and the government memorandum in further opposition, on November 18, 2011. The magistrate judge entered M&R on December 2, 2011, and defendant filed objections on December 14, 2011.

STATEMENT OF FACTS

The court adopts and incorporates by reference the magistrate judge's findings of fact, found in M&R at pages one through six, to which no party has objected. For ease of reference, certain portions of the magistrate judge's findings are copied below.

> On December 3, 2010, Detective Kenneth Adams of the Farmville Police Department applied for a warrant to search the residence located at 4829 Greenpine Road in Farmville, North Carolina, where Defendant lived with his girlfriend, Charlene Evans. Detective Adams had been investigating Defendant for possible drug activities. In support of the application, Detective Adams submitted an affidavit . . . [copy of affidavit passage omitted].
>
> Based on the sworn statements contained in the affidavit, a judge in Superior Court, Pitt County, issued a warrant to search the residence at Greenpine Road. When law enforcement officers executed the search warrant and searched the residence, they found approximately 62.83 grams of crack cocaine, 53.89 grams of cocaine, 6.78 grams of marijuana, drug ledgers, two digital scales, a box of latex gloves and two boxes of small plastic bags. Defendant was later indicted for conspiracy to distribute and possess with the intent to distribute cocaine and crack cocaine, distribution of cocaine and crack cocaine, and possession with the intent to distribute cocaine and crack cocaine.
>
> On November 15, 2011, the Court held a hearing on Defendant's motion to suppress. At the suppression hearing, Detective Adams testified regarding the facts supporting

2

his application for the search warrant as follows. During his investigation of Defendant, Detective Adams contacted Waste Industries, the company that collects residential garbage in Farmville, to assist him in a search of the trash from Defendant's home. Detective Adams spoke with one of the Waste Industries garbage truck drivers, Carl Massey ("Massey"), who told him that the trash would be picked up from Defendant's residence on a Thursday. Detective Adams was not present during the trash collection from Defendant's residence on November 24, 2010. Upon searching the trash from Defendant's residence, Detective Adams found several "plastic baggies with white residue . . . [that] . . . c[a]me back positive for crack cocaine." Detective Adams later learned, however that Friday, not Thursday, was the regularly-scheduled trash collection day for Defendant's residence. Thus, Defendant's garbage can was not at the street curb on November 24th, but instead had been removed from its location "up against the carport" of Defendant's home.

Detective Adams decided to conduct a second trash pull on a Friday, the regularly-scheduled trash collection day for Defendant's residence. Detective Adams "made contact with Mr. Massey again and asked for him to assist . . . again on a Friday, which [was] . . . the 3rd of December." He instructed Massey that the trash collected from Defendant's residence "needed to be out by the curb" this time. On the morning of December 3, 2010, Detective Adams called Massey, who advised that he was en route to Defendant's residence. Detective Adams drove to the site and positioned himself at "the end of Greenpine Road where [he] had a direct line of sight of the road." However, Detective Adams lacked "direct line of sight of the residence" and therefore could not see the trash can when it was collected. Massey collected garbage from three or four residences, compacted it, then pulled up to Defendant's residence. Massey informed Detective Adams that "as he was pulling up to [Defendant's] residence, a [black] female brought the trash out to the end of the driveway." The black female appeared to be a teenager. Massey collected the garbage from Defendant's residence and immediately called Detective Adams, who asked Massey to bring the trash to an "evidence room out by the ballfield right down the street from the police department," where the previous trash search on November 24th had taken place. Detective Adams watched the garbage truck drive down Greenpine Road and then to the ball field. It was approximately 7:30 a.m. when Detective Adams met with Massey and retrieved the trash from Defendant's residence. Upon searching through the garbage, Detective Adams again found "latex gloves, plastic bags, knots, and . . . clear plastic bags with residue." The white residue tested positive for crack cocaine. Detective Adams testified that he also found documentation inside the trash belonging to Defendant's girlfriend.

Charlene Evans, Defendant's girlfriend, testified that she and her five children resided with Defendant at 4829 Greenpine Road on December 3, 2010. Of the five children, Ms. Evans had three girls between the ages of fourteen and nine years old at the time. Ms. Evans stated that no other black females had access to the home.

3

Ms. Evans left the residence at 5:45 a.m. on the morning of December 3, 2010 to go to work. Her nine-year-old daughter left the house at 7:00 a.m. to ride the school bus. The school bus picked up her two other daughters from the house at 8:00 a.m. Ms. Evans testified that neither she nor her daughters brought the trash to the curb on December 3, 2010. Instead, she stated that her "son took it . . . . [t]o the side of the road Thursday night." She explained that they "usually take it on Thursday night . . . . [t]o be picked up the next day, the trash day." Although Ms. Evans could not specifically recall whether her son had taken the garbage out on Thursday night, December 2nd, or whether the garbage can was at the curb when she left for work on Friday morning, December 3rd, she testified that it was her son's "responsibility to do the trash" and that if her son neglected to take the trash out on Thursday night, she would "usually make him get up and do it" on Friday morning.

Tamara Harper, the fifteen-year-old daughter of Charlene Evans, also testified. She verified that "rolling the trash out to the curb" was her brother's responsibility, and that neither she nor her sister brought the garbage can to the street on the morning of December 3, 2010.

M&R at 1-6 (citations omitted).

## DISCUSSION

A.  Standard of Review

The district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review of those portions to which a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the reasoning and recommendation of the magistrate judge. Diamond v. Colonial & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

4

B.  Analysis

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Searches and seizures inside a home without a warrant are presumptively unreasonable. Brigham City v. Stuart, 547 U.S. 398, 403 (2006). The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search. Murray v. United States, 487 U.S. 533, 536 (1988).

Warrants must be based upon probable cause, supported by oath or affirmation. United States v. Clyburn, 24 F.3d 613, 617 (4th Cir. 1994). In determining whether probable cause exists to support issuance of a search warrant,

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate judge had a substantial basis for . . . concluding that probable cause existed.

Illinois v. Gates, 462 U.S. 213, 238 (1983) (internal citations and quotation marks omitted).

A reviewing district court must accord great deference to the magistrate's assessment of the facts presented to him. United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1999). When a district court reviews a probable cause determination, information in the warrant affidavit obtained from an illegal search must be set aside "and the remaining content of the affidavit examined to determine whether there was probable cause to search, apart from the tainted averments." United States v. Gillenwaters, 890 F.2d 679, 681 (4th Cir. 1989).

Magistrate Judge Webb found that the affidavit provided by Detective Adams was sufficient

5

to establish probable cause to search defendant's residence. M&R at 9. Further, Judge Webb determined that even if the affidavit was lacking and the warrant invalid, Detective Adams conducted the search of defendant's residence in good faith reliance upon the search warrant. Id. at 9-10.

Defendant raises three objections. First, defendant objects to the finding that the application for the search warrant established probable cause to search defendant's residence. Second, defendant disputes the finding that the search warrant was carried out in good-faith reliance upon the search warrant. Finally, defendant maintains that he had a reasonable expectation of privacy in the trash collected from his residence on December 3, 2010.

"When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116, 119 (4th Cir. 1997) (citing Blackwood, 913 F.2d at 142). Here, the November 24, 2010 search of the trash collected from defendant's residence was improper, California v. Greenwood, 486 U.S. 35, 40-42 (1988), and the court must set aside the information obtained from it. Gillenwaters, 890 F.2d at 681.

Nonetheless, even without the information obtained from the search conducted November 24, 2010, the court finds sufficient evidence in the warrant affidavit to support issuance of the search warrant. First, Detective Adams informs that he had been investigating defendant, who has previous felony firearm and drug convictions, for two years. Detective Adams describes controlled purchases of crack cocaine from defendant, conducted by a confidential source on September 27, 2009, and again on October 8, 2009. Further, the affidavit includes a statement from an individual who admits to selling crack cocaine for defendant over a three year period. Detective Adams also submits

substantial evidence that defendant resides at 4829 Greenpine Road, Farmville, NC, 27828. Detective Adams informs that he had conducted surveillance at the residence, had repeatedly seen defendant's car there, and had confirmed the address with defendant's probation officer.

After providing substantial evidence that defendant is involved in criminal activity and resides at 4829 Greenpine Road, the affidavit informs of evidence retrieved from defendant's trash on November 24, 2010, and December 3, 2010. As stated above, the court does not consider evidence obtained from the improper first search. But evidence obtained from the latter search further buttresses the magistrate's finding of probable cause.[1] Defendant maintains that "the affidavit does not specifically identify defendant's residence as the source of the items seized." Def.'s Objection 2. The court agrees with Magistrate Judge Webb, however, that the affidavit, as worded, sufficiently linked defendant to the garbage searched.[2] That search yielded several plastic baggies with the corners cut off and several pairs of latex gloves, which items Detective Adams indicates from his training and experience are commonly used for packaging drugs. The clear baggies were sent instantly to the Pitt County ID Lab for analysis and tested positive for crack cocaine.

Based on the above, the court finds substantial evidence to support the magistrate's

---

[1] Magistrate Judge Webb found as fact that the trash collected form defendant's residence on December 3, 2010, was at the curb, not within the curtilage of the residence, and therefore proper. Neither party has objected to this finding, and the court's review of the hearing transcript finds the factual determination accurate. Accordingly, defendant did not have a reasonable expectation of privacy in the trash placed at the curb. Greenwood, 486 U.S. at 40.

[2] The affidavit states in relevant part: "On 12-03-201 [I] had members of Waste Industries assist me in the collection of trash from Johntrelle Rodgers residence located at 4829 Greenpine Rd. Farmville, NC[] 27827. This collection was made during the normal scheduled day for pickup. As the trash truck stopped at the residence prior to Rogers residence a black female brought the trash can out to the roadway and left the trash can at the end of the driveway. This female then walked back to the residence and went inside. The Waste Industries truck then pulled up to next to Rogers trash can and dumped it into the back of the truck. *This* trash was then taken to a secure location where I then collected *this* trash from the truck. I then conducted a search of *this* trash." Def.'s Mot. to Suppress, Ex. 1 at 7 (emphasis added).

7

determination of probable cause and issuance of search warrant. Accordingly, the court need not reach defendant's objection to Magistrate Judge Webb's Leon analysis, where such analysis would only be necessary if the court found probable cause lacking.

## CONCLUSION

Upon *de novo* review of those portions of the M&R to which specific objections have been filed, and upon considered review of those portions to which no objection has been made, the court ADOPTS as its own the ultimate findings and recommendations of the magistrate judge (DE # 30). For the reasons given above, defendant's motion to suppress (DE # 19) is DENIED.

SO ORDERED, this the 6th day of February, 2012.

LOUISE W. FLANAGAN
United States District Judge

8

Case 4:11-cr-00087-FL   Document 42   Filed 02/06/12   Page 8 of 8