IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:11-CR-87-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | O R D E R |
| TORRICK JOHNTRELLE RODGERS, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on the motion of *pro se* Defendant Torrick Johntrelle Rodgers ("Defendant") for the return of property seized from him at the time of his arrest. Mot. for Return of Prop. ("Def.'s Mot.") [DE-106]; Fed. R. Crim. P. 41(g). The Government has responded in opposition to Defendant's motion, Resp. in Opp'n to Def.'s Mot. ("Gov't's Resp.") [DE-109], and Defendant filed a reply.[1] Reply to Resp. ("Def.'s Reply") [DE-111]. The court held hearings in this matter on April 27 and May 27, 2015 to further develop the record. [DE-134, -139]. Accordingly, all briefing is complete and the motion is ripe for adjudication. For the reasons stated below, Defendant's motion [DE-106] is granted in part and denied in part.

## I. PROCEDURAL BACKGROUND

On December 3, 2010, Defendant was arrested by members of the Farmville (North Carolina) Police Department in the parking lot of Farmville Central High School pursuant to outstanding warrants. Def.'s Mot. [DE-106] at 1; Adams' Decl. [DE-109-1] at 1 ¶ 2. Ultimately, on August 10, 2011, Defendant was charged in a federal indictment with the following offenses: (1) conspiracy to

---

[1] Defendant filed an objection to the Government's response, which the court interpreted as a permissible reply. *See* Apr. 27, 2015 Hr'g. Tr. [DE-134] at 3.

distribute and possess with the intent to distribute five kilograms or more of cocaine and 280 grams or more of cocaine base (crack), in violation of 21 U.S.C. § 846 ("count one"); (2) distribution of a quantity of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1) ("count two"); (3) distribution of a quantity of cocaine base (crack) and aiding and abetting the distribution of a quantity of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 ("count three"); and (4) possession with the intent to distribute 28 grams or more of cocaine base (crack) and a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 ("count four"). [DE-1]. Subsequently, on April 18, 2012, Defendant entered a plea of guilty to all four counts. [DE-47]. On November 7, 2013, the court entered a judgment of conviction, sentencing Defendant to 211 months' incarceration on each count to be served concurrently, five years of supervised release on each counts 1 and 4, and a term of three years of supervised release on each counts 2 and 3, all such terms to run concurrently. [DE-85]. The court's judgment was affirmed by the Fourth Circuit Court of Appeals on December 23, 2014. [DE-103, -104].

Thereafter, on February 20, 2015, Defendant filed a motion for the return of property seized from him at the time of his arrest pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure. [DE-106]. The court held an evidentiary hearing on Defendant's motion on April 27, 2015, which was recessed until May 27, 2015, to allow Defendant to subpoena witnesses. Apr. 27, 2015 Order [DE-117] at 1; Apr. 27, 2015 Hr'g. Tr. [DE-134]. The court denied Defendant's oral motion for the appointment of counsel and directed the Clerk of Court to issue five signed but otherwise blank subpoenas to Defendant in conformity with Fed. R. Civ. P. 45. Apr. 27, 2015 Order [DE-117]. Defendant then filed a Motion for Discovery [DE-119], and the court directed the Government to file a response to inform the court whether Defendant had served the Government with any discovery

2

requests in connection with his motion for return of property. May 11, 2015 Order [DE-121]. The court also returned a deficient subpoena to Defendant and directed the United States Marshal to serve the remaining subpoenas on behalf of Defendant. *Id.* The Government responded, stating that Defendant had not served the Government with any discovery requests. Gov't's Resp. [DE-122]. Further, Defendant filed a response to the court's May 11, 2015 Order, attaching a corrected subpoena. [DE-123]. The court then directed the United States Marshal to serve the corrected subpoena on behalf of Defendant and denied Defendant's Motion for Discovery without prejudice as Defendant had not served the Government with any discovery requests in connection with the instant motion. May 18, 2015 Order [DE-124].

The evidentiary hearing was reconvened and concluded on May 27, 2015, where the court took the matter under advisement. May 27, 2015 Hr'g. Tr. [DE-139]. The court allowed each party three weeks from the conclusion of the hearing to submit supplemental briefing or affidavits in this matter. May 27, 2015 Order [DE-128]. Defendant filed a Motion for Clarification, inquiring whether he must file a motion in order to obtain a copy of the arrest warrant and report, and asking how he may obtain the assistance of a handwriting expert. [DE-131]. The court then issued an order denying Defendant's motion to the extent that Defendant was asking the court to provide him with evidence or to appoint an expert. June 4, 2015 Order [DE-133]. Defendant then filed a Motion for Transcripts [DE-136] and a motion seeking a 60-day extension of time to file his supplemental brief [DE-137]. The Government opposed Defendant's motions [DE-140], and the court entered an order allowing Defendant's request for additional time, but denying the motions in all other respects. [DE-141]. Defendant was allowed until July 6, 2015 to submit supplemental briefing or affidavits in connection with his motion for return of property. *Id.* Defendant filed a supplemental

3

memorandum in support of his motion for return of property on July 6, 2015. Def.'s Suppl. Mem. [DE-145].

In support of his motion, Defendant argues that upon his arrest on December 3, 2010, Detective Kenneth Adams searched Defendant's person and seized eleven one-hundred dollar bills ($1,100.00) from Defendant. Def.'s Mot. [DE-106] at 1. Defendant claims further that Detective Adams refused to count the money in front of Defendant in violation of North Carolina law, did not properly inventory the money seized, and put the money in Detective Adams' own pocket. *Id.* Defendant argues that he is thus entitled to the return of $1,100.00 from the Government. *Id.* In response, the Government argues that Detective Adams seized only $337.00 from Defendant's person, Defendant did not request that Detective Adams count the money in front of Defendant, Adams correctly inventoried the money, and the money was placed in an evidence bag upon seizure. Gov't's Resp. [DE-109] at 2. In his supplemental memorandum, Defendant urges the court to return the full $1,100.00 and focuses on the lack of corroboration of Detective Adams' testimony and credibility issues, including Detective Adams' failure to adhere to statutory requirements for inventorying property and the inconsistency of Detective Adams' handwriting throughout all of the forms that he claims to have authored. Def.'s Suppl. Mem. [DE-145] at 1-3.

At the evidentiary hearings, Defendant testified and presented the testimony of Charlene Evans ("Evans"), the mother of Defendant's child with whom Defendant was residing on December 3, 2010. Defendant submitted the following exhibits: a document entitled "(1) Warrant to Search for and Seize a Person or Property," (Def. Ex. 1), and the search warrant for Defendant's Residence (4829 Greenpine Road in Farmville, North Carolina) dated December 3, 2010 (Def. Ex. 2), both of which were admitted without objection. The court reserved ruling on the admissibility of Evans'

testimony regarding what she overheard while at the Farmville Police Department and what she was told by another law enforcement officer on the night of Defendant's arrest, May 27, 2015 Hr'g. Tr. [DE-139] at 8-11, and of two exhibits submitted by Defendant: a purported newspaper article entitled "Detective Gets Suspended Sentence in Theft Case" (marked as Def. Ex. 3), and purported handwritten interview notes from an interview of Carl Massey (marked as Def. Ex. 4).

The Government presented the testimony of Detective Adams, and submitted the following exhibits: an inventory of items seized pursuant to search (Gov't Ex. 1), and a Farmville Police Department Evidence/Property Report (Gov't Ex. 2). These exhibits were admitted without objection. The court considers first the admissibility of Evans' testimony and Def. Exs. 3 and 4.

### A.  Evans' Testimony

At the hearing, Defendant elicited testimony from Evans about statements made by Officer Rose Edmonds that Evans overheard while at the Farmville Police Department on December 3, 2010. May 27, 2015 Hr'g. Tr. [DE-139] at 8-11. Specifically, Evans testified that she heard Officer Edmonds discuss money found in Defendant's house during the execution of a search warrant, that Officer Edmonds said that Detective Adams "had enough money to buy Bojangles," and Officer Edmonds told Evans not to go home that evening. *Id.* Counsel for the Government objected to this line of questioning, on hearsay and relevance grounds, arguing that Defendant's pending motion concerns only the money seized from his person by Detective Adams at the time of Defendant's arrest.

Pursuant to the Federal Rules of Evidence, only relevant evidence is admissible. Fed. R. Evid. 402. Relevant evidence is defined as that which "has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining

5

the action." Fed. R. Evid. 401. In the instant motion, Defendant alleges that Detective Adams improperly seized $1,100.00 from Defendant's person at the time of his arrest. Def.'s Mot. [DE-106]. Defendant has made no allegations about other law enforcement officers being involved in the improper seizure of Defendant's money, that money was seized from his home, nor that there is a larger scheme or plot taking place by the Farmville Police Department as a whole to improperly seize money during arrests. Further, there has been no showing that Officer Edmonds is in any way tied to the seizure of Defendant's money. Accordingly, this testimony is irrelevant and the Government's objection is sustained.[2]

### B.    Def. Ex. 3 – News Article Entitled "Detective Gets Suspended Sentence in Theft Case"

Defendant also introduced into evidence a newspaper article published in The Daily Reflector, entitled "Detective Gets Suspended Sentence in Theft Case" (Def. Ex. 3). The article appears to report the conviction of Officer Edmonds (identified as a narcotics officer of the Greenville, North Carolina Police Department) arising from her theft of money seized during the course of narcotics investigations in 2012, as well as her destruction and the theft of evidence. May 27, 2015 Hr'g. Tr. [DE-139] at 21. The article describes how Edmonds seized money from individuals while searching their apartments and that either money was seized without being counted or a receipt was not provided following seizure. Counsel for the Government objected to the admission of the exhibit, arguing that Officer Edmonds is uninvolved with the facts of the present case, Officer Edmonds was not present when Defendant was arrested and his money seized, nor does

---

[2] This testimony is also inadmissible hearsay, to the extent that it is being offered for the truth of Officer Edmonds' statements on the night of December 3, 2010, where Officer Edmonds did not testify at the hearings. Hearsay is an out-of-court statement offered for the truth of the matter asserted, Fed. R. Evid. 801, and is generally inadmissible, Fed. R. Evid. 802.

the newspaper article implicate Detective Adams. *Id.* at 24. When asked how the article related to his case, Defendant argued that neither he nor the individuals mentioned in the news article either received receipts for money seized or had the money counted in their presence by a law enforcement officer. *Id.* at 24-25.

As discussed above, Defendant makes no allegations that any law enforcement officers other than Adams were involved in the seizure of his money, and Defendant does not implicate a larger plot or scheme by the Farmville Police Department (or the Greenville Police Department) to engage in this behavior. The disputed exhibit does not mention Detective Adams, and Edmonds association with the Farmville Police Department at the time in question remains unclear. Thus, Def. Ex. 3 is irrelevant and there has been no argument made of a "motive, opportunity, intent, preparation, plan, knowledge, identity, absence mistake, or lack of accident" to allow the exhibit to be admitted as other acts evidence pursuant to Rule 404(b)(2). Accordingly, the Government's objection to the introduction of Def. Ex. 3 is sustained.

### C.    Def. Ex. 4 – Handwritten Interview Notes from Carl Massey Interview

Defendant sought to introduce handwritten notes from an interview with Carl Massey as Def. Ex. 4. May 27, 2015 Hr'g. Tr. [DE-139] at 25-27. Defendant introduced Def. Ex. 4 along with a copy of Gov't Ex. 2 (the Farmville Police Department Evidence and Property Report), arguing that while Detective Adams purportedly wrote both documents, the handwriting in each document differs such that the same individual could not have written both documents. May 27, 2015 Hr'g. Tr. [DE-139] at 26-27. Counsel for the Government objected to the admission of Def. Ex. 4, arguing that the interview notes had not been identified at any point during the hearing. *Id.* In response, Defendant

7

Case 4:11-cr-00087-FL   Document 146   Filed 07/27/15   Page 7 of 15

argued that "the handwritten document, that's from part of that my [sic] discovery that Detective Adams wrote up that was his interview with Carl Massey." *Id.* at 27.

The Federal Rules of Evidence provide that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Here, Defendant has failed to produce evidence sufficient to support a finding that he has personal knowledge of the source of the handwritten notes labeled as Def. Ex. 4. Indeed, Counsel for the Government has actually identified Def. Ex. 4 as being interview notes with an individual named Carl Massey, and Defendant simply states that the document was part of his discovery and Defendant knows it was written by Detective Adams. *Id.* The document is neither signed nor dated, nor does it have any identifying information aside from the statement "Interview from Carl Massey." Def. Ex. 4. The exhibit lacks any indicia of reliability as to its author. Accordingly, on the evidence presented, the court cannot establish that Defendant has personal knowledge of the source of Def. Ex. 4 sufficient to identify it pursuant to Fed. R. Evid. 602, and the Government's objection to its introduction is sustained.

## II. STATEMENT OF THE FACTS

### A.   Testimony of Defendant

Upon Defendant's arrival at Farmville High School on December 3, 2010, Detective Adams directed Defendant to get out of the car. Apr. 27, 2015 Hr'g. Tr. [DE-134] at 5. Once Defendant exited the vehicle, Detective Adams searched Defendant's pocket and seized the money therein. *Id.* Defendant asked Detective Adams repeatedly to count the money in front of Defendant and for a receipt for the money seized, but Detective Adams ignored Defendant's requests. *Id.* Detective Adams then placed the money taken from Defendant into Detective Adams' own pocket. *Id.*

8

When Defendant received the Inventory of Items Seized Pursuant to Search (Gov't Ex. 1) during his criminal trial, Defendant learned that the amount stated in the inventory receipt did not reflect the amount of money seized during his arrest. *Id.* at 5-6. Defendant stressed in his testimony at both hearings that Detective Adams did not follow protocol for a search incident to arrest, as N.C. Gen. Stat. § 15A-254 mandates:

> [u]pon seizing items pursuant to a search warrant, an officer must write and sign a receipt itemizing the items taken and containing the name of the court by which the warrant was issued. If the items were taken from a person, the receipt must be given to the person. If the items are taken from a place or vehicle, the receipt must be given to the owner, or person in apparent control of the premises or vehicle if the person is present; or if he is not, the officer must leave the receipt in the premises or vehicle from which the items were taken.

N.C. Gen. Stat. § 15A-254 (2014); Apr. 27, 2015 Hr'g. Tr. [DE-134] at 8-9, 19, 34-39; May 27, 2015 Hr'g. Tr. [DE-139] at 19-20. Further, Defendant alleges the practice of counting money in front of an arrestee and giving receipts is commonly ignored by officers. May 27, 2015 Hr'g. Tr. [DE-139] at 21-22, 24-25.

### B.    Affidavit of Paul Rodgers

In support of Defendant's motion, Paul Rodgers ("Paul"), Defendant's brother, submitted an affidavit. Aff. of Paul Rodgers [DE-106-2]. According to the affidavit, Paul gave Defendant $1,100.00 dollars, in eleven one-hundred dollar bills, so that Defendant could purchase various materials for Paul's rental properties. *Id.* at 1. Upon their arrival at the Farmville Central High School basketball game, Defendant, Paul, and Paul's niece were immediately approached by Detectives Adams and Braxton. *Id.* Detective Adams placed Defendant under arrest and searched Defendant. *Id.* While searching Defendant's person, Detective Adams removed $1,100.00 and placed the money into Detective Adams' own pocket. *Id.* Defendant asked for a receipt for the

9

money or for the money to be given to Paul. *Id.* However, the detectives did not give the money to Paul, inventory the money, or read Defendant his rights. *Id.* Paul did not testify at the hearings.

### C. Testimony of Charlene Evans

Charlene Evans was living with Defendant at the residence listed in the search warrant at the time of the warrant's execution and has a seven-year-old child with Defendant. May 27, 2015 Hr'g. Tr. [DE-139] at 5-6. Evans testified that she did not receive a copy of the Inventory of Items Seized Pursuant to Search (Gov't Ex. 1) on December 3, 2010, nor does she remember signing the back page of the inventory. *Id.* at 4. Evans testified further that she does not recall Defendant telling her about the $1,100.00 dollars in his pocket prior to filing the instant motion, nor does she recall Paul Rodgers mentioning the $1,100.00 dollars given to Defendant for repairs on Paul's rental properties. *Id.* at 7.

### D. Testimony of Detective Adams

At the time of Defendant's arrest, Detective Adams was a Narcotics Investigator for the Farmville Police Department. Apr. 27, 2015 Hr'g. Tr. [DE-134] at 10. On December 3, 2010, Adams obtained a search warrant to search the residence located at 4829 Green Pine Road in Farmville, North Carolina. *Id.*; *see also* Def. Ex. 2. Detective Adams believed this to be Defendant's residence. Apr. 27, 2015 Hr'g. Tr. [DE-134] at 10-11. At approximately 7:20 p.m., Detective Adams and other officers were waiting for Defendant's arrival in the parking lot of Farmville High School. *Id.* at 11. Upon his arrival at Farmville High School, Defendant was arrested pursuant to an existing felony warrant for drug offenses. *Id.* at 12. Detective Adams searched Defendant's person, removed $337.00 from Defendant's pocket, and placed the money in an evidence bag. *Id.* at 12-13. During the search of Defendant's person and seizure of Defendant's

10

property, Defendant did not ask Detective Adams to count the money. *Id.* at 12. At no time—from the search incident to arrest in the parking lot of Farmville High School to the search of the residence at 4829 Green Pine Road—did the officers find eleven one-hundred dollar bills on Defendant's person. *Id.* at 12-13. Both the Inventory of Evidence Property Sheet (Gov't Ex. 2) and Inventory of Items Seized Pursuant to a Search (Gov't Ex 1) accurately reflect that $337.00 was taken from Defendant's person during his arrest. *Id.* at 14-16.

On cross-examination, Detective Adams testified that he completed the Inventory of Evidence Property Report (Gov't Ex. 2). Apr. 27, 2015 Hr'g. Tr. [DE-134] at 31-32. Detective Adams said he could not remember if he performed the inventory in the presence of another officer, but that other people were "around" when he completed the inventory sheet. *Id.* at 34. When asked about the procedure described in Def. Ex. 1, Adams testified that in his nine years of law enforcement experience, he was not aware of that procedure. Apr. 27, 2015 Hr'g. Tr. [DE-134] at 19, 38-39.

### III. DISCUSSION

Rule 41(g) of the Federal Rules of Criminal Procedure provides, in relevant part, that:

> [a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g). A motion based on Rule 41(g) should be denied "if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for property as evidence continues." *United States v. Mills*, 991 F.2d 609, 612 (9th Cir. 1993) (citing *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1061 (9th Cir.

11

1991)). The rule directs courts to receive evidence on any factual issue necessary to decide the motion. Fed. R. Crim. P. 41(g).

Both parties agree that Defendant is entitled to return of $337.00, seized from Defendant at the time of his arrest. May 27, 2015 Hr'g. Tr. [DE-139] at 29-31. The $337.00 remains in the custody of the Farmville Police Department, and the Government is prepared to return $337.00 to Defendant. *Id.* Because the money seized from Defendant during his arrest was not forfeited as part of his federal case and criminal proceedings have terminated, *see Mills*, 991 F.2d at 612, Defendant is entitled to return of $337.00. Apr. 27, 2015 Hr'g. Tr. [DE-134] at 16; May 27, 2015 Hr'g. Tr. [DE-139] at 30; *United States v. Brant*, 684 F. Supp. 421, 423 (M.D.N.C. 1988) ("The general rule is that seized property *other than contraband*, should be returned to its rightful owner once the criminal proceedings have terminated.") (internal quotations omitted). Thus, the Government is ordered to return $337.00 to Defendant.

The remaining issue is whether Defendant is entitled to the return of an additional $763.00. The court has received testimony, briefing, and exhibits as evidence to decide the factual issue of whether Detective Adams seized $337.00 or $1,100.00 from Defendant during Defendant's arrest. Defendant contends that Detective Adams did not follow proper procedure in failing to count the money in front of Defendant or issue him a receipt, according to N.C. Gen. Stat. § 15A-254,[3] and thus, Detective Adams lacks credibility regarding the amount of money seized. Def.'s Mot. [DE-106-1] at 1; Def.'s Suppl. Mem. [DE-145] at 1-2. Further, Defendant alleges that Detective Adams has not been truthful to the court because Detective Adams did not complete the Evidence Property

---

[3] N.C. Gen. Stat. § 15A-254 is a "procedural statute specifically related to the execution of search warrants," . . . the purpose for which "is accountability for items of personal property obtained pursuant to a search warrant." *State v. Duarte*, 174 N.C. App. 626, 621 S.E.2d 342 (2005) (table), *vacated on other grounds*, 361 N.C. 153, 696 S.E.2d 523 (2006).

12

Report as evidenced by the handwriting on that report. Def.'s Suppl. Mem. [DE-145] at 2-3. The Government contends that Defendant is only entitled to $337.00, as that is the full amount of money seized during Defendant's arrest. Gov't's Resp. [DE-109] at 2. Specifically, the Government highlights that Defendant did not mention the seizure of $1,100 during his criminal proceedings and the testimony presented at the hearings fails to corroborate Defendant's allegations regarding the amount of money seized from his person on the evening of December 3, 2010. Apr. 27, 2015 Hr'g. Tr. [DE-134] at 6-7; May 27, 2015 Hr'g. Tr. [DE-139] at 29.

The court's decision turns on its interpretation of the contradictory facts elicited at the hearing and as set forth in the evidence presented. "In assessing the credibility of witnesses, trial courts consider 'variations in demeanor and tone of voice.'" *Rahman v. United States,* No. 7:08-CR-126-D, 2013 WL 5222160, at *5 (E.D.N.C. Aug. 27, 2013) (unpublished) (quoting *Anderson v. City of Bessemer City, N. C.*, 470 U.S. 564, 575 (1985)), *report and recommendation adopted*, 2013 WL 5230610 (E.D.N.C. Sept. 16, 2013). "In addition, '[d]ocuments or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it.'" *Id.* (citing *United States v. Marcavage,* 609 F.3d 264, 281 (3d Cir. 2010)). "Additional considerations can include the witness's motive to lie and the level of detail in the witness's statements." *Id.* (citing *United States v. Wilson,* 624 F.3d 640, 665 (4th Cir. 2010)). Before addressing the substantive issues, the court must first consider the weight, if any, this court should afford the hearing testimony. After observing all of the witness testimony at the hearings and assessing each of their demeanor on the witness stand, under direct and cross examinations, the court finds the testimony of Detective Adams to be credible and consistent and the testimony of Defendant to be not fully credible. *See United States v. Stevenson,* 396 F.3d 538,

13

542-43 (4th Cir. 2005) (noting that assessing the credibility of witnesses is the province of the district court).

In weighing the evidence, the court considered Defendant's allegations that Detective Adams failed to follow statutory mandates for the inventory of evidence, Apr. 27, 2015 Hr'g. Tr. [DE-134] at 18-19, 34-39. Indeed, this is the sum of Defendant's argument. However, although Detective Adams may have failed to inventory the money in Defendant's presence and issue Defendant a receipt, that alone does not establish that Detective Adams is misleading the court about the amount of money seized. Detective Adams' assertion that he seized only $337.00 from Defendant at the time of Defendant's arrest remained consistent throughout all the proceedings. Detective Adams reported that he seized $337.00 in the Evidence Property Report, dated December 3, 2010 (Gov't Ex. 2), in the Inventory of Items Seized Pursuant to Search, dated December 8, 2010 (Gov't Ex. 1), in his declaration, dated March 28, 2015, Det. Adams' Decl. [DE-109-1] at 1 ¶¶ 3, 5, and during his testimony at the evidentiary hearing on April 27, 2015. Apr. 27, 2015 Hr'g. Tr. [DE-134] at 12-16, 30. Further, the impact of Paul's statement in his affidavit that he gave Defendant $1,100.00 is diminished by the testimony of Charlene Evans, Defendant's ex-girlfriend and the mother of his child, with whom Defendant lived at the time of the arrest. Evans testified that Defendant never mentioned to her that Paul gave Defendant $1,100.00 or that $1,100.00 was seized from Defendant at the time of his arrest. May 27, 2015 Hr'g. Tr. [DE-139] at 7. Most telling is the fact that Defendant failed to mention throughout his criminal proceedings that $1,100.00, not $337.00 as stated in the Inventory of Items Seized Pursuant to a Search and Evidence Property Report, was seized during his arrest. Apr. 27, 2015 Hr'g. Tr. [DE-134] at 6-7. Although Defendant discovered that only $337.00 was listed on inventory reports in 2011, during discovery for his criminal trial,

Defendant failed to allege that $1,100.00 was seized at the time of his arrest until he filed the instant motion. *Id.* at 5-7.

Having considered the arguments and the evidence presented, the court determines that Defendant has failed to demonstrate that $1,100.00 was seized from him at the time of his arrest. *See United States v. Rudisill*, 358 F. App'x 421, 422 (4th Cir. Dec. 28, 2009) (per curiam) (unpublished) (affirming the district court's denial of a Rule 41(g) motion for return of property where there was "no evidence that $2,956 was seized from Rudisill as he claims. Rather, the Government acknowledges that $1,480 was seized, but was returned to Rudisill."). Here, the Government acknowledges that $337.00 was seized from Defendant at the time of his arrest, and the exhibits from the time of Defendant's arrest corroborate that $337.00 was seized from Defendant. Accordingly, Defendant is entitled to return of the $337.00

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion [DE-106] is GRANTED IN PART and DENIED IN PART. Defendant is entitled to the return of $337.00 from the Government. Defendant is ordered to file a document with the court to inform the Government where to disburse the $337.00 within **thirty (30) days**. The Government shall then coordinate with the Farmville Police Department to disburse the $337.00 to Defendant within **thirty (30) days** of the date of Defendant's filing.

So ordered, the 27th day of July 2015.

Robert B. Jones, Jr.
United States Magistrate Judge